**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMYNDAS PHARMACEUTICALS SINGLE MEMBER P.C. and AMYNDAS PHARMACEUTICALS, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC. and ZEALAND PHARMA U.S., INC.,<br><br>*Defendants*. | Civil Action No. 20-cv-12254-LTS-JCB<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT ZEALAND PHARMA U.S., INC.'S**
**MOTION FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.   Amyndas, not Zealand U.S., must show "good cause" to justify disclosing confidential materials obtained in this action to its counsel in the Danish Action. .................................. 3

II.  Amyndas has failed to show "good cause" justifying disclosure of discovery from this litigation to its Danish counsel. ........................................................................................... 6

III. Amyndas's attempt to distinguish "disclosure" from "use" makes no sense. ..................... 11

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
    48 F.4th 18 (1st Cir. 2022) ................................................................................................2

*In re Polymer Solutions International, Inc.*,
    2019 WL 1239778 (D. Md. Mar. 18, 2019) ......................................................................11

*Venequip, S.A. v. Mustang Mach. Co., LLC*,
    2022 WL 3951173 (S.D. Tex. Aug. 30, 2022), *aff'd*, 2023 WL 5031480
    (5th Cir. Aug. 7, 2023) ......................................................................................................10

*Venequip, S.A. v. Mustang Machinery Company, LLC*,
    2022 WL 823856 (N.D. Ill. Mar. 18, 2022) ......................................................................11

**Statute:**

28 U.S.C. § 1782 ..........................................................................................................10, 11, 12

**Other Authority:**

Hon. Leo T. Sorokin, Standing Order re Default Protective Order in Complex
    Cases (Sept. 6, 2017),
    https://www.mad.uscourts.gov/boston/pdf/sorokin/LTS%20Standing%20Orde
    r%20re%20Default%20PO.pdf ..........................................................................................5

Zealand Pharma U.S., Inc. ("Zealand U.S.") files this reply brief in support of its motion for a protective order prohibiting Plaintiffs Amyndas Pharmaceuticals Single Member P.C. and Amyndas Pharmaceuticals, LLC (collectively, "Amyndas") from disclosing confidential discovery documents and materials from this litigation to Amyndas's counsel in the litigation between Amyndas and Zealand Pharma A/S ("Zealand Denmark") in Denmark, including the documents identified in Amyndas's February 16, 2024, letter (Exhibit 1).

## INTRODUCTION

The Court should grant Zealand U.S.'s motion. The parties agreed to a Stipulated Protective Order that puts the burden squarely on Amyndas to justify disclosing confidential materials outside this litigation with "good cause," and Amyndas has failed to meet that burden. Its effort to funnel discovery from this litigation to its Danish counsel is a transparent effort to bypass the limitations on discovery in Danish court—limitations the First Circuit held were a foreseeable result of the valid forum-selection clause to which Amyndas agreed. Amyndas's arguments to the contrary are meritless.

Amyndas begins by arguing that Zealand U.S. has the burden of showing "good cause" for the protective order, but that argument conflicts with the plain terms of the Stipulated Protective Order. Amyndas's reliance on the parties' negotiations prior to entering into the Order cannot displace the Order's plain language and, in any event, those negotiations do not show that Zealand U.S. agreed that Amyndas could freely disclose confidential discovery to Danish counsel without showing good cause, much less that Zealand U.S. agreed that *Zealand U.S.* would have to show "good cause" to *prevent* such disclosure.

Amyndas comes nowhere close to meeting its burden to show good cause. First, Amyndas appeals to "fairness," arguing that sharing confidential information with Danish counsel will put

1

the parties on "equal footing." But that makes no sense. Under the terms of the Order, Zealand U.S.'s in-house counsel cannot access the highly confidential discovery that Amyndas produced in this case, and therefore cannot use that information in the Danish action. Amyndas's request would give Amyndas an unfair *advantage*, as it would enable Amyndas to channel Zealand U.S.'s highly confidential information to Amyndas's Danish counsel, even as Zealand U.S.'s in-house counsel is not permitted to see Amyndas's highly confidential information.

Second, Amyndas argues that it is not trying to circumvent the limited discovery rules in Denmark by seeking to disclose discovery in this case to its Danish counsel, because Danish courts actually "do allow for discovery." Opp. 10. But this argument requires Amyndas to back-pedal all its prior statements to this Court and the First Circuit decrying the limitations on discovery in Denmark—limitations it told the First Circuit "would severely limit, if not entirely preclude," its "ability to obtain relevant discovery." ECF No. 35 at 12-13. Moreover, even while attempting to take back these statements, Amyndas concedes that discovery in Danish court is restrictive, never claims to have even sought the materials at issue in the Danish action, and never says it could obtain the materials in Denmark if it tried. Amyndas's request thus has all the hallmarks of circumventing a valid forum-selection clause, and Amyndas has no good answer to the cases denying foreign discovery requests for a similar reason. That Amyndas may "be suffering buyer's remorse about the forum to which it agreed" is not good cause to bypass the bargain it struck in the forum-selection clause and disclose confidential discovery to counsel outside this action. *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 34 (1st Cir. 2022). The Court should enter a protective order.

# ARGUMENT

**I.    Amyndas, not Zealand U.S., must show "good cause" to justify disclosing confidential materials obtained in this action to its counsel in the Danish Action.**

The Stipulated Protective Order requires Amyndas to demonstrate "good cause" before it may disclose discovery obtained in this U.S. proceeding to its counsel in the Danish proceeding. Mem. 3-4. Amyndas's attempt to flip the burden onto Zealand U.S. to justify *non*-disclosure cannot be squared with the terms of the Order, and—contrary to Amyndas's argument (at 9)—it also cannot be squared with the parties' negotiations surrounding the Order. In fact, the parties' negotiations only confirm that Zealand U.S.'s interpretation of the Order is the correct one, and that the burden to justify any disclosure lies with Amyndas.

As Zealand U.S. explained in its motion, Section 4.1 of the Stipulated Protective Order sets out a default rule that the parties are permitted to use confidential "information or document[s] produced in this Action … only in connection with the prosecution or defense of this Action." ECF No. 129 § 4.1. The provision recognizes just two exceptions: first, confidential discovery may be disclosed if "otherwise permitted in this Order"; and second, it may be disclosed "as permitted by order of this Court for good cause shown." *Id*. Amyndas latches onto the first exception. It argues its disclosure is "otherwise permitted in this Order" via Section 5.4, because Section 5.4 supposedly "permits disclosure to Danish Counsel upon notice to the other party unless the resisting party moves for a protective order barring disclosure." Opp. 9. Thus, Amyndas argues, its letter notice to Zealand U.S. alone makes disclosure "permitted in th[e] Order," and the burden flips to Zealand U.S. to justify a protective order. *Id.*

Amyndas's argument misreads Section 5.4. Section 5.4 "permit[s]" disclosure only in one scenario that did not occur here—if Zealand U.S. *"consent[s]"* to the disclosure. ECF No. 129 § 5.4 (emphasis added). Absent consent, however, Section 5.4 does not authorize disclosure

3

of confidential information; rather, the provision leaves the question whether to allow a non-consented-to disclosure of confidential information *to this Court*. *Id*. In other words, disclosure is "otherwise permitted" under Section 4.1 only when a party "consent[s]" under Section 5.4. Here, Zealand U.S. withheld its consent to Amyndas's requested disclosure; therefore, the confidential materials Amyndas identified may be disclosed only "as permitted by order of this Court *for good cause shown*"—the only other available avenue for disclosure. *Id*. § 4.1 (emphasis added).[1]

Amyndas does not engage with the language of the Stipulated Protective Order and the interplay between Sections 4.1 and 5.4. Instead, it argues that applying Sections 4.1 and 5.4 as written "would make no sense" because "the parties specifically negotiated Section 5.4 to allow for coordination of the US and Danish Action." Opp. 9. But the fact that Section 5.4 allows a party to ask the opposing party for permission to disclose confidential discovery documents outside the case, including "[f]or [the] purpose[] of … ensuring the pursuit of consistent claims and defenses between the actions," ECF No. 129 § 5.4, does not mean Section 5.4 creates a default rule in favor of disclosure. Nothing about Zealand U.S.'s interpretation of the Order conflicts with the language or objective of Section 5.4; Amyndas still has the ability to seek and obtain disclosure, so long as it shows good cause or obtains Zealand U.S.'s consent.

By contrast, Amyndas's interpretation, creating a default rule in favor of disclosure, conflicts with the parties' intent as expressed in the Stipulated Protective Order. Amyndas argues

---

[1] The Stipulated Protective Order's allocation of the burden of showing "good cause" to the party seeking to disclose confidential information rebuts Amyndas's argument that the burden rests on the party who "seeks to keep the information confidential." Opp. 6 (quotation marks omitted). That may be the default rule, but none of the cases Amyndas cites addressed a situation where the parties had already agreed to allocate the burden to the party seeking disclosure, as they did here. In this case, the Stipulated Protective Order, not inapposite case law, governs.

4

that the parties agreed to Section 5.4 because they "remained at an impasse regarding whether [confidential] information could be outright used in the Danish Action." Opp. 5 n.2. But the Stipulated Protective Order itself makes clear that Zealand U.S. "d[id] not agree to the use of [confidential discovery] produced in this Action in the Danish Action," ECF No. 129 at 8 n.2, which belies the notion that Zealand U.S. agreed to a provision in the Stipulated Protective Order allowing disclosure except where it could show good cause to prevent disclosure.[2]

Zealand U.S.'s interpretation of the Order is consistent with the default practice in federal court to limit the distribution of confidential discovery to the parties and their counsel in that litigation. Mem. 5-6. Amyndas spills a considerable amount of ink arguing that protective orders *can* be fashioned or modified to allow for the sharing of confidential discovery across multiple actions. Opp. 6-7. But Zealand U.S. has not argued otherwise, only that the default rule is to prevent sharing confidential discovery with third parties. This Court's own default protective order prohibits disclosure of confidential discovery to third parties, *see* Mem. 6, as does Judge Sorokin's default protective order, contrary to Amyndas's assertion, *see* Hon. Leo T. Sorokin, Standing Order re Default Protective Order in Complex Cases (Sept. 6, 2017) ("a [confidential] document may be accessed only by the parties' outside counsel and the Court.").[3] Interpretating the Stipulated Protective Order to place the burden of showing "good cause" on the party seeking disclosure of such documents—here, Amyndas—is consistent with this default rule.

Unable to find support in the plain language of the Stipulated Protective Order for its argument that disclosure of confidential material is presumptively allowed whenever one party

---

[2] Amyndas tries to draw a distinction between "use" and "disclosure," but as explained in Section III, *infra*, that distinction makes no sense and is not supported by the language of the Order.

[3] https://www.mad.uscourts.gov/boston/pdf/sorokin/LTS%20Standing%20Order%20re%20Default%20PO.pdf.

5

simply *notifies* the other that it is going to disclose, Amyndas relies on e-mail correspondence preceding the Order. But the correspondence does not show that Zealand U.S. proposed imposing a "good cause" standard on itself. Rather, in the correspondence, Zealand U.S.'s counsel described a proposal under which Amyndas could share confidential information "on a document by document basis, at the written request of [Amyndas] *and consent of [Zealand U.S.]*." Ex. I at 8 (emphasis added). Counsel for Zealand U.S. thus proposed making disclosure entirely dependent on Amyndas obtaining Zealand U.S.'s consent, which is consistent with the plain language of Section 5.4 and inconsistent with the rule Amyndas advocates here.

\*   \*   \*

In sum, the plain language of the Stipulated Protective Order places the burden on Amyndas to show "good cause" to justify disclosure of confidential discovery documents to its Danish counsel, and the parties' negotiations surrounding those provisions confirm that interpretation. The Court should reject Amyndas's effort to distort the Order's language and invert the normal rule that confidential discovery is used solely for the action in which it is produced.[4]

**II.    Amyndas has failed to show "good cause" justifying disclosure of discovery from this litigation to its Danish counsel.**

Amyndas has failed to show the requisite good cause to justify disclosing the confidential discovery documents listed in its February 16, 2024, letter—or any other confidential discovery documents disclosed in this litigation—to Danish counsel. As Zealand U.S. explained in its motion, Amyndas's request is a transparent effort to circumvent the limitations on discovery that Amyndas bargained for when it agreed to litigate its dispute with Zealand Denmark in Denmark

---

[4] Even if the burden were on Zealand U.S. to show good cause justifying non-disclosure (and it is not), Amyndas's agreement to a forum-selection clause that requires it to litigate in Denmark under the more restrictive discovery rules of the Danish courts, and its clear effort here to circumvent those limitations, is good cause to grant the motion. Mem. 7-13; Section II, *infra*.

6

through a forum-selection clause deemed enforceable by this Court and the First Circuit. Mem. 7-13. None of Amyndas's efforts to avoid that conclusion has merit.

*First*, Amyndas repeatedly invokes notions of "fairness" to justify its requested disclosure. According to Amyndas, it will be disadvantaged if it is not allowed to disclose confidential discovery from this litigation to its outside Danish counsel, because Zealand U.S.'s in-house counsel, Ravinder Chahil, "has access to several hundreds of Confidential documents produced by Amyndas in this US litigation" and is "able to use such discovery to advise Zealand Denmark." Opp. 4 ("Mr. Chahil … has had the benefit of accessing discovery here—including … confidential information produced by Amyndas—and is able to use such discovery to advise Zealand Denmark"); *see also id*. at 15 (similar). This is factually wrong. Zealand U.S.'s in-house counsel does not have access to the overwhelming majority of confidential Amyndas documents produced in this litigation. Under the Stipulated Protective Order, a party's "Designated In-house Counsel" is permitted to view documents an opposing party has designated "CONFIDENTIAL," but *is not authorized* to access discovery that is "designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY." ECF No. 129 § 5.1.[5] Critically, 21,220 of the 22,510 total documents produced by Amyndas in this litigation that bear a confidentiality designation have been designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY, while another 312 documents have no confidentiality designation. Declaration of Tara Thigpen ¶ 2. Moreover, Amyndas has designated the deposition transcript of the single witness it has provided to date

---

[5] There is an exception for Designated In-house Counsel that is a "U.S.-Based In-house Counsel," a term defined to cover a party's in-house counsel "barred in a United States state or [federal] court, who reside[s] in the United States, and [is] subject to the jurisdiction of this Court independent of any relationship to this Action." ECF No. 129 §§ 2.5, 5.1(b). Zealand U.S. has not designated, and does not have, in-house counsel that meets the requirements for a "U.S.-Based In-house Counsel." *Id*. at 6 n.1.

7

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY. *Id.* ¶ 3. Under the Stipulated Protective Order, Zealand U.S.'s in-house counsel is not authorized to see or access those Amyndas documents, which constitute over 95% of the documents Amyndas has produced.[6]

Amyndas's pleas for fairness ring particularly hollow given that all the confidential documents it has requested to disclose in its letter are designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY. Thigpen Decl. ¶ 4. Far from seeking fairness, Amyndas is trying to secure an *advantage* that will allow it to disclose HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY documents to Danish counsel while Zealand U.S. is not disclosing Amyndas's similar confidential discovery. *Id.* ¶ 2; p. 7, *supra*.

*Second*, Amyndas claims that it is not trying to circumvent the limitations on discovery in Danish court by channeling discovery from this litigation to its Danish counsel, but only trying to engage in "effective, speedy and efficient coordination of related litigations." Opp. 6. Amyndas reasons that although "discovery rules in Danish courts … are more restrictive than those in US courts," Danish courts still "provide procedures for discovery." *Id.* at 13; *see also id.* at 10 ("Danish courts do allow for discovery"). But the provision of "discovery procedures" in the abstract says nothing about the whether those "procedures" enable a party to compel and obtain any specific discovery. As Amyndas states, "Danish courts allow parties to *request* discovery from an opposing party," but the request must be "highly specific" and—most critically—the opposing party is free to "refuse[] to produce the discovery." *Id.* at 13 (emphasis added). True, that may lead to an "adverse inference [being] applied against th[e refusing] party," *id.*, but the materials

---

[6] Oddly, Amyndas says it is somehow unfair for Zealand U.S. to be able to share *its own* confidential documents with Zealand Denmark, while Amyndas will not be permitted to share those same documents with its Danish counsel. Opp. 18. There is nothing unfair about that. Each party is permitted to share its own confidential information with its counsel or anyone else.

remain unproduced.  And, as Amyndas's Danish-counsel declarant acknowledges, "certain types of discovery documents are generally exempt from discovery, and *no motion to compel* is available in Danish courts."  ECF No. 349 at 2 n.1 (emphasis added).  Therefore, Amyndas provides no basis to conclude that it could obtain the confidential discovery it has obtained in this case through the discovery procedures available under Danish law.

Amyndas's conduct confirms that the Danish procedures are not favorable to Amyndas.  Amyndas does not dispute Zealand U.S.'s assertion that Amyndas has never even tried to obtain any discovery in the Danish proceeding to date.  *Cf.* Mem. 6; ECF No. 332 ¶ 9.  Amyndas's silence on that issue should come as no surprise in light of its prior representations to this Court (and the First Circuit) that the limitations on discovery in Danish court "would severely limit, *if not entirely preclude*, [Amyndas's] ability to obtain relevant discovery," and that "Zealand's internal and confidential documents … would be exempt from production, and there is no procedure available to Amyndas to compel such documents."  ECF No. 35 at 12-13 (emphasis added).  Amyndas previously supported these representations with a statement from Danish counsel that "internal working documents, confidential work documents, etc.—the types of materials often important to a trade secretes dispute—are generally exempt from discovery" in Denmark.  ECF No. 36 ¶¶ 9-12; *see* Mem. 7.  These are precisely the "types of materials" Amyndas seeks to disclose here.

*Third*, Amyndas argues that the forum-selection clause that requires it to litigate the Danish action in Denmark is irrelevant because the clause is "about venue, not discovery."  Opp. 14-15.  This makes no sense.  Amyndas's agreement to litigate its dispute with Zealand Denmark in Denmark necessarily included an agreement to litigate under the rules of that jurisdiction, including discovery rules.  Mem. 7-8.  As the First Circuit held, in addressing Amyndas's argument that requiring it to litigate under the discovery rules in Denmark would "severely inhibit, if not

9

preclude, [its] ability to obtain the discovery needed to prove its claims," Brief for Plaintiffs-Appellants at 44, No. 21-7181 (1st Cir. Feb. 10, 2022), those limitations were "clearly foreseeable" and part of the bargain Amyndas struck by agreeing to the forum-selection clause. *See* Mem. 7-8.

Amyndas barely addresses the cases holding that the presence of a forum-selection clause is a key indicator that a litigant's request for discovery from the U.S. courts is an attempt to circumvent the rules of discovery in the forum it selected. *See* Mem. 10-12 (discussing cases).[7] Amyndas tries to distinguish these cases because they involved "requests for *new* discovery," Opp. 16, but that is irrelevant to whether Amyndas's request, despite the forum-selection clause, is an effort to circumvent foreign discovery limits. The key takeaway from those cases is that courts are highly skeptical of a party's efforts to obtain and use U.S. discovery in support of a foreign proceeding, when the requesting party is bound by a forum-selection clause. Mem. 11-12. Why? Because when "the parties [have] explicitly agreed to resolve all disputes" in a foreign forum, a request to use foreign discovery in support of that lawsuit "has all the hallmarks of an attempted end-run around the forum selection clause." *Venequip, S.A. v. Mustang Mach. Co., LLC*, 2022 WL 3951173, at *3 (S.D. Tex. Aug. 30, 2022), *aff'd*, 2023 WL 5031480 (5th Cir. Aug. 7, 2023); *see* Mem. 12-13. That rationale has full force here.[8]

---

[7] Amyndas attacks several straw men in an effort to avoid Zealand U.S.'s case law. It argues that 28 U.S.C. § 1782 does not govern this discovery dispute. Opp. 12-13. Zealand U.S. never argued that it does—only that the § 1782 factors are useful guides for a court's determination of the proper scope of a protective order. This is the law. *See* Mem. 10 (citing cases). Amyndas's argument (at 15) that there is no "blanket rule" against providing § 1782 discovery where there is a forum-selection clause is another straw man. Again, Zealand U.S. has not suggested otherwise. Zealand U.S. argues only that the presence of a forum-selection clause is a key indicator that a § 1782 request is an effort to circumvent foreign discovery rules. Amyndas offers nothing to undermine that conclusion, nor to avoid its application to this case.

[8] Amyndas repeatedly states that Danish courts are *receptive* to discovery obtained in other jurisdictions. *E.g.*, Opp. 13-14. Maybe so, but this has nothing to do with whether Amyndas's effort to use discovery from this proceeding despite the presence of a forum-selection clause is an effort to circumvent the Danish court's own limitations on discovery. Unlike Zealand U.S.'s cases,

Amyndas tries to avoid Zealand U.S.'s case law on the theory that they "d[id] not involve 'multi-jurisdictional' disputes." Opp. 15. That is not true. Take one example: *Venequip, S.A. v. Mustang Machinery Company, LLC*, 2022 WL 823856 (N.D. Ill. Mar. 18, 2022), involved an application for § 1782 discovery filed by a Venezuelan company (Venequip) to obtain discovery from a U.S. company (Caterpillar, Inc.) in support of its lawsuit against a Swiss entity (Caterpillar S.A.R.L.). *See* Application for Order Pursuant to 28 U.S.C. § 1782 at 1, *In re Application of Venequip, S.A.*, No. 1:21-cv-6297 (N.D. Ill. Nov. 23, 2021), ECF No. 1. That is no less "multi-jurisdictional" than the situation in *In re Polymer Solutions International, Inc.*, 2019 WL 1239778 (D. Md. Mar. 18, 2019),[9] on which Amyndas relies, which involved a suit between a U.S. company against "a global company incorporated in the Isle of Jersey [with] … offices around the world." *Id*. at *7. Nonetheless, *Venequip* deemed the request for § 1782 discovery to be "attempt to circumvent the foreign proof-gathering restrictions" under Swiss law, 2022 WL 823856, at *3—a conclusion the Seventh Circuit affirmed, *see* Mem. 11. The same is true here, and that fact scuttles Amyndas's ability to satisfy its burden to show "good cause."

### III. Amyndas's attempt to distinguish "disclosure" from "use" makes no sense.

Amyndas perplexingly asserts that it is only attempting to "disclose" the confidential materials to Danish counsel, not to "use" the materials in the Danish action, and that the Stipulated Protective Order allows the former unless Zealand U.S. shows good cause for non-disclosure, but leaves the latter open to dispute. This distinction makes no sense.

---

none of the cases Amyndas cites involved a forum-selection clause.

[9] *Polymer* is the only decision Zealand U.S. is aware of that has concluded that a party's effort to obtain § 1782 discovery despite a forum-selection clause was not improper circumvention because of the "multi-jurisdictional nature" of the dispute. But *Polymer* based its conclusion, in part, on the theory that it is "uncommon" for courts to deny § 1782 discovery in the face of a forum-selection clause. 2019 WL 1239778, at *7. As Zealand U.S.'s cases show, that is not true. Mem. 10-12 (collecting cases).

11

To begin, the Stipulated Protective Order does not differentiate between "disclosure" and "use." Amyndas argues that the parties presumptively permitted disclosure in Section 5.4, while retaining the ability to fight about use, *see* Opp. 17, but as already explained above, Section 5.4 does not presumptively permit disclosure, *see* Section I, *supra*. Moreover, the Stipulated Protective Order is clear that Zealand U.S.'s objection applies to more than the physical filing of the materials in Danish court, as it states that "Zealand US reserves its right to object to … any attempt on behalf of Amyndas to circumvent the mechanism laid out in 28 U.S.C. § 1782 to obtain discovery located in the United States for use in a foreign litigation." ECF No. 129 at 8 n.2.

Moreover, Zealand U.S. would have never agreed to a distinction between "disclosure" and "use," because that distinction makes no sense. If Amyndas discloses confidential discovery from this action to Danish counsel, it is necessarily "using" that discovery in that action. Even if the materials are not formally filed with the Danish court, Amyndas's Danish counsel could still *use* the discovery to frame its strategy. Indeed, it is difficult to understand why Amyndas wants to share the documents with outside counsel in the Danish action other than to *use* them in some way in that action. Amyndas itself concedes the documents will be used for "Danish discovery requests and coordination of claims and defenses." Opp. 17.

In any event, Amyndas's arguments for why it should be able to "use" the documents it requests to disclose—as it understands the term "use," *i.e.*, to file with the Danish court—are duplicative of its arguments in favor of merely "disclosing" those documents, *see* Opp. 17-19, and fail for the same reasons.

## CONCLUSION

Zealand U.S. requests that the Court enter a protective order prohibiting Amyndas from disclosing confidential discovery documents and materials from this litigation, including those listed in the February 16, 2024, letter, to Amyndas's outside counsel in the Danish Action.

12

Dated:  March 22, 2024

/s/ Robert D. Carroll
Robert D. Carroll (BBO# 662736)
Tara R. Thigpen (BBO# 707508)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
rcarroll@goodwinlaw.com
tthigpen@goodwinlaw.com

Huiya Wu (*pro hac vice*)
Tiffany Mahmood (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel.: (212) 813-8800
hwu@goodwinlaw.com
tmahmood@goodwinlaw.com

*Attorneys for Zealand Pharma U.S., Inc.*

**CERTIFICATE OF SERVICE**

I, Robert D. Carroll, hereby certify that a copy of the foregoing document was filed on March 22, 2024 through the CM/ECF system, and that service was made upon all counsel of record through the CM/ECF system as indicated on the Notice of Electronic Filing (NEF).

*/s/ Robert D. Carroll*
Robert D. Carroll